IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD EUGENE JACKSON, II | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:17-cv-1135 |
| v. | ) | |
| | ) | |
| WILLIAM SHOUPPE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 171) and enter judgment in their favor and against Plaintiff.

I.     **Relevant Procedural History**

Plaintiff Richard E. Jackson, II was incarcerated in the Beaver County Jail ("BCJ") on July 28, 2015 as a pretrial detainee awaiting prosecution in state court. Approximately three months later, on October 24, 2015, the BCJ transferred him from its general population into its Special Needs Unit ("SNU"). From that point forward, Plaintiff remained housed in one of the jail's more restrictive areas, such as the SNU or the Restrictive Housing Unit ("RHU"), until he was transferred to a state correctional institution around late January or early February 2017.

Plaintiff is proceeding *pro se* in this civil action. In his Amended Complaint (ECF No. 35), he named as defendants the following BCJ officers and officials: Warden William

---

[1]
    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, *Footnote continued on the next page…*

Schouppe, Jennifer Monza, Captain Thomas Trkulja, Sergeant Mark Campbell, Officer Debra Ruff, Deputy Warden Carole Steele-Smith, Sergeant Lakea Tyson, and, Valerie Bearer (collectively, "Defendants"). Plaintiff brought numerous claims against them pursuant to 42 U.S.C. § 1983 for events that are alleged to have occurred at the BCJ from January 2016 through January 2017. (ECF No. 35 at pp. 7-15).

The Court previously dismissed Plaintiff's claims of conspiracy, denial of access to courts, and denial of equal protection. (ECF No. 57). It also dismissed Plaintiff's due process claims premised upon allegations that Warden Shouppe and Capt. Trkulja improperly handled his grievances; that Sgt. Campbell issued a "false misconduct" on February 19, 2016 and that Monza, Capt. Trkulja, and Sgt. Tyson did not follow proper procedures at his subsequent misconduct hearing; and that Sgt. Campbell on February 19, 2016 and Officer Bearer on March 4, 2016 improperly confiscated his property (commissary items and thermal underwear, respectively).

There are eight remaining claims in this action. Two of them are substantive due process claims against Officer Ruff. Those claims are premised upon Plaintiff's allegations that Officer Ruff delayed in arranging for him to receive medical attention and subjected him to unsanitary cell conditions during an incident that occurred on April 28, 2016 when he suffered a bout of food poisoning. In his six other claims, Plaintiff contends that each defendant retaliated against him in violation of his First Amendment rights for filing grievances while he was housed at the BCJ. Specifically, Plaintiff claims that:

(1) Monza retaliated against him by classify him as SNU status;

---

the undersigned has the authority to decide dispositive motions and enter final judgment.

(2) in February 2016 Sgt. Campbell, Monza, Sgt. Tyson, and Capt. Trkulja retaliated against him in the manner in which they handled the alleged "false misconduct";

(3) in March 2016 Officer Bearer retaliated against him by confiscating his property (the thermal underwear);

(4) Officer Ruff's actions on April 28, 2016, in which she allegedly delayed him medical attention and left him in an unsanitary cell, were retaliatory;

(5) in July 2016 Warden Schouppe, Deputy Warden Steele-Smith, and Sgt. Tyson retaliated against him by withholding his privileged/legal mail; and

(6) Deputy Warden Steele-Smith retaliated against him by falsifying documents in order to place him in administrative segregation.

Following the close of discovery, Defendants filed the pending Motion for Summary Judgment (ECF No. 171) and supporting documents (ECF Nos. 172-174). Plaintiff filed his brief in opposition to summary judgment (ECF No. 201) and supporting documents (ECF No. 202-03), to which Defendants then filed their replies (ECF Nos. 204-05).

Defendants contend that they are entitled to summary judgment on numerous grounds, including their contention that Plaintiff failed to exhaust his available administrate remedies. In support of their failure-to-exhaust defense, Defendants produced all the grievances that they claim Plaintiff filed during the relevant time period. (Defs' Ex. D, ECF No. 174-4 at pp. 2-45; Defs' Ex. E, ECF No. 174-5 at p. 2; Defs' Ex. K, ECF No. 174-11 at p. 2; Defs' Ex. N, ECF No. 174-14 at pp. 2-7). They assert that Plaintiff did not grieve any claim remaining in this civil action in any of these grievances.

Plaintiff counters that Defendants cannot prove that the grievances contained in the summary judgment record comprise the totality of the grievances he filed. He avers in one of the affidavits he submitted in opposition to the summary judgment motion that "some of the

grievances [he] filed, or attempted to have filed, against BCJ staff, were…disregarded, destroyed, hindered and/or tampered with by BCJ staff." (Pl's Ex. I, ECF No. 203-11 at p. 4). Plaintiff also directed the Court to grievances and request slips that he contends support a finding that he filed grievances that are missing from the summary judgment record. (Pl's Ex. B, ECF No. 203-4 at pp. 1-6; Pl's Ex. C, ECF No. 203-5 at pp. 2-3; Pl's Ex. G, ECF No. 203-9 at p. 2).

The Prison Litigation Reform Act ("PLRA") mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a threshold issue to be addressed by the court. *See, e.g., Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The court is the factfinder on exhaustion issues and, therefore, it may hold an evidentiary hearing in order to resolve factual disputes pertaining to, and then rule upon, the failure-to-exhaust defense. *Hardy v. Shaikh*, 959 F.3d 578, 581 n.1 (3d Cir. 2020); *Paladino v. Newsome*, 885 F.3d 203, 210-11 (3d Cir. 2018); *Small v. Camden County*, 728 F.3d 265, 269-71 (3d Cir. 2013). The Court held an evidentiary hearing on March 13, 2020 for the limited purpose of deciding whether Plaintiff exhausted his available administrative remedies for the claims remaining in this case. Capt. Trkulja, who is the BCJ's grievance coordinator, Warden Shouppe, and Plaintiff all testified at the hearing.

Based upon all of the evidence presented, the Court concludes that Plaintiff did not exhaust his available administrative remedies for any of his retaliation claims and, therefore, judgment will be granted in Defendants' favor with respect to all of these claims. The Court further concludes that

4

Plaintiff did exhaust the claims that Officer Ruff delayed his medical care and subjected him to an unsanitary cell during the April 28, 2016 food-poisoning incident. As a result, the Court has evaluated whether the alternative arguments raised by Defendants in support of summary judgment with respect to those two claims have merit and has determined that they do. Therefore, the Court will grant judgment in Officer Ruff's favor on those two claims as well.

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*; *see, e.g., Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

Once the moving party has met its initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show

5

probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cnty Family YMCA*, 418 F.3d 265,266 (3d Cir. 2005); *Doe v. Cnty of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

As previously explained, the court is the finder of fact with respect to the defense that a plaintiff failed to exhaust available administrative remedies as required by PLRA. Therefore, the court may hold an evidentiary hearing in order to resolve factual disputes and decide the threshold issue of whether Plaintiff's claims are procedurally defaulted for failure to exhaust. *Hardy*, 959 F.3d at 581 n.1; *Paladino*, 885 F.3d at 210-11; *Small*, 728 F.3d at 269-71.

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g., Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories...sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

III.     **Discussion**

A.     <u>Exhaustion and Procedural Default</u>

1.     Findings of Fact

The Court makes the following findings of fact regarding the Defendants' failure-to-exhaust

defense.

The BCJ's grievance policy is set forth on page 30 of its Inmate Handbook. (Defs' Ex. C,

ECF No. 174-3 at p. 31). The first step of that policy explains how an inmate files a grievance. It

provides:

> The Housing Officer will make [the grievance form] available and provide it
> when needed by you. Upon completion of the form including a signature and the
> date; *the form is to be placed in the request box*. The Captain, upon receiving the
> form, will log the grievance and/or appeal that was filed by you. After the form is
> logged it will be forwarded to the responsible staff member for a response and
> possible solution.

(*Id.*) (emphasis added).

Inmates housed in the BCJ's general population can place their grievances directly into

the box themselves. Inmates housed in the SNU and RHU do not have direct access to the box

and must hand their grievances to an officer for placement in the box. (Hr'g Tr. at pp. 6-7, 30-33,

40-41).

During the time period relevant in this case, a midnight supervisor collected the

grievances from the boxes and placed them in Capt. Trkulja's mailbox. (*Id.* at p. 7). Capt. Trkulja

reviewed and photocopied each one and assigned it a number according to the BCJ's sequential

numbering system. He also recorded in a logbook each grievance by the number assigned to it,

the name and housing location of the inmate who filed it, the date Capt. Trkulja processed it, and

a brief description of the issue the inmate raised in the grievance.[2] (*Id.* at pp. 7-8, 28-29; Defs'
Hr'g Ex. 1). Capt. Trkulja then forwarded each grievance to the BCJ staff member he determined
should answer it. (*Id.* at p. 8).[3] After that staff member responded to the grievance, Capt. Trkulja
would return it to the inmate through the prison's internal mail system. (*Id.* at pp. 9, 31).

Plaintiff understood the BCJ's grievance policy and how to utilize it when he was housed
in the SNU and RHU. (*Id.* at pp. 51-53). He never complained that he lacked access to the
grievance forms. (*Id.* at p. 27).

Plaintiff filed 22 grievances after he was transferred out of the BCJ's general population
on October 24, 2015 and thus was required to hand his grievances to an officer for placement in
the box. Capt. Trkulja recorded each of those grievances in the logbook and a copy of each one is
contained in the summary judgment record.[4] (*Id.* at p. 12; Defs' Hr'g Ex. 1). Plaintiff raised a
variety of issues in those grievances and many of them are not relevant to this case.

---

[2] At the hearing, Defendants introduced the relevant pages from the grievance logbook as
Exhibit 1.

[3] On occasion, a midnight supervisor mistakenly placed a grievance in Warden Shouppe's
mailbox instead of Capt. Trkulja's. When this occurred, Warden Shouppe forwarded the
grievance to Capt. Trkulja, who then assigned it a grievance number and recorded it in the
logbook. (Hr'g Tr. at 22-24, 28, 38, 43-46).

[4] The following is a list of all grievances Plaintiff filed after he was transferred out of the BCJ's
general population. Each grievance is identified by the number Capt. Trkulja assigned to it
followed by the date Capt. Trkulja recorded he processed it: (1) #3022, 11/23/15 (Defs' Ex. D,
ECF No. 174-4 at pp. 10-11); (2) #3049, 12/7/15 (*id.* at pp. 12-13); (3) #3072, 12/21/15 (*id.* at
pp. 14-15); (4) #3094, 1/5/16 (*id.* at pp. 16-17); (5) #3138, 1/20/16 (*id.* at pp. 18-19); (6) #3139,
1/20/16 (*id.* at pp. 20-21); (7) # 3172, 1/22/16 (Defs' Ex. E, ECF No. 174-5 at p. 2); (8) #3194,
1/29/16 (Defs' Ex. D, ECF No. 174-4 at p. 22); (9) #3228, 2/17/16 (*id.* at pp. 24-25); (10) #3347,
4/1/16 (*id.* at pp. 26-27); (11) #3381, 4/11/16 (Defs' Ex. K, ECF No. 174-11 at pp. 2-3);
(12) #3382, 4/11/16 (Defs' Ex. D, ECF No. 174-4 at pp. 28-29); (13) #3383, 4/11/16 (*id.* at pp.
30-31); (14) #3388, 4/15/16 (*id.* at pp. 32-33; Pl's Ex. B, ECF No. 203-4 at pp. 3-6); (15) #3403,
4/21/16 (*id.* at pp. 36-37); (16) #3404, 4/21/16 (*id.* at pp. 34-35); (17) #3406, 4/22/16 (*id.* at
pp. 38-39); (18) #3410, 4/27/16 (*id.* at pp. 40-41); (19) #3417, 5/3/16 (Defs' Ex. N, ECF
*Footnote continued on the next page…*

Defendants argue that Plaintiff did not grieve any of the claims remaining in this action. A fair reading of grievance #3417 (Defs' Ex. N, ECF No. 174-14 at pp. 2-7), however, establishes that Plaintiff grieved his delayed-medical-care and unsanitary-cell-conditions claims. Therefore, the Court rejects Defendants' contention that Plaintiff failed to exhaust those two claims.

The Court reaches the opposite conclusion with respect to Plaintiff retaliation claims. The Court finds that Plaintiff did not grieve those claims in any of the grievances contained in the summary judgment record.[5] Plaintiff does not dispute that fact. Rather, as set forth above, he asserts that he filed additional grievances within which he complained about retaliation but that those grievances are not part of the record because unidentified BCJ staff tampered with them and prevented them from being processed. The Court does not find Plaintiff's assertion to be credible for the following reasons.

Plaintiff testified at the hearing that he kept track of the grievances he submitted and that he followed up with Capt. Trkulja when he did not receive a response to one. (Hr'g Tr. at pp. 56, 62). Similarly, in an affidavit Plaintiff submitted in opposition to Defendants' summary judgment motion he averred that "each time I filled out a grievance, signed and dated it, *I would also make a note in my own personal records of the reasons for the grievances, what they were about, and*

---

No. 174-14 at pp. 2-6); (20) #3436, 5/16/16 (*id.* at p. 7); (21) #3462, 6/3/16 (Defs' Ex. D, ECF No. 174-4 at p. 42); (22) #3664, 10/3/16 (*id.* at p. 44).

[5] In grievance # 3172 (Defs' Ex. E, ECF No. 174-5 at p. 2) Plaintiff challenged his placement in the SNU; in grievance # 3381 (Defs' Ex. K, ECF No. 174-11 at pp. 2-3) he maintained that he should be permitted thermal underwear in the SNU; and, in grievance # 3417 (Defs' Ex. N, ECF No. 174-14 at pp. 2-7) he complained about Officer Ruff's treatment of him when he had food poisoning. Plaintiff did not assert in any of those grievances that the complained-of actions were taken against him for retaliatory reasons.

*the approx. date I turned it in to the BCJ staff to be submitted and filed by the grievance*
*coordinator*." (Pl's Ex. I, ECF No. 203-11 at p. 15) (emphasis added). Plaintiff further averred
that when he did not receive a response to a grievance, or when he believed that a grievance had
not been received by Capt. Trkulja, he would submit another grievance or a request slip in order
to address the alleged missing grievance. (*Id.*) Therefore, Plaintiff took measures to ensure that
no BCJ staff member would be able to destroy a grievance and prevent it from being received
and logged by Capt. Trkulja.

       If Plaintiff had in fact submitted a grievance that was never logged and processed by
Capt. Trkulja, Plaintiff would be able to point to either his personal notes or a follow-up
grievance or request slip to support such a finding. Plaintiff did not produce his personal notes.
Although he filed grievances and requests slips that demonstrate that on occasion he complained
about the grievance procedures in the jail's restricted housing areas and/or asserted that he had
not yet received a response to a specific logged grievance, those documents do not persuade the
Court that Plaintiff filed any other grievances in addition to those contained in the summary
judgment record. Indeed, they confirm that the totality of the grievances submitted by Plaintiff
during the relevant time period are in the record.

       For example, in grievance #3388, which Plaintiff signed on April 12, 2016, he challenged
the requirement that he had to hand his grievances to an officer for placement in the grievance
box. (Defs' Ex. N, ECF No. 174-4 at pp. 32-33; Pl's Ex. B, ECF No. 203-4 at pp. 3-6). He also
indicated that he had not yet received a response to some grievances he had filed, but he did not
provide any specific information about those alleged missing grievances, such as when he had
submitted them or what he had grieved in them. A few days later, on April 15, 2016,

Capt. Trkulja provided Plaintiff with a list of all the grievances that his records indicated Plaintiff had filed at the BCJ as of that date.[6] (Pl's Ex. G, ECF No. 203-9 at p. 2).

The following day, on April 16, 2016, Plaintiff submitted grievances #3403 and #3404 (Defs' Ex. N, ECF No. 174-4 at pp. 34-37). Notably, Plaintiff did not contend that he had submitted grievances that were missing from Capt. Trkulja's list. Rather, Plaintiff identified four of the grievances listed by Capt. Trkulja and asserted that he had not yet received a response to them. Those grievance were: (1) grievance number #3347 (*id.* at p. 26), which Capt. Trkulja had recorded as being processed on April 1, 2016 and within which Plaintiff had requested information about the law library; and (2) grievances #3381, #3382 and #3383 (*id.* at pp. 28-31 and Defs' Ex. K, ECF No. 174-11 at pp. 2-3), which Capt. Trkulja had recorded as being processed on April 11, 2016 and in which Plaintiff had complained about not being permitted to have thermal underwear in the SNU, the temperature in the SNU, and his access to the law library cart. It is reasonable to conclude that if Plaintiff had submitted any other grievances by that point in time that had not been assigned a number and/or responded to, he would have reported that fact to Capt. Trkulja. He did not do so.[7]

Less than one month later, Plaintiff filed grievance #3436, which he dated May 12, 2016. (ECF No. 174-14 at p. 7). Plaintiff contended that he had not yet received a response to grievance #3417, which is the grievance in which he had challenged Officer Ruff's handling of his

---

[6] Earlier in the year, on January 6, 2016, Capt. Trkulja had provided Plaintiff with a similar list of all grievances filed by Plaintiff as that date. (Pl's Ex. C, ECF No. 203-5 at p. 3).

[7] In grievance #3406 (Defs' Ex. N, ECF No. 174-4 at p. 38), which Plaintiff dated April 20, 2016, he asserted that he had not received a response to *requests slips* in which he had asked that he receive the daily menu and meal schedule.

April 28, 2016 food-poisoning incident. This is further evidence that Plaintiff alerted Capt. Trkulja when he believed a grievance he had submitted had not been properly processed.

In summary, the Court finds that all grievances Plaintiff submitted during the relevant time period were recorded in Capt. Trkulja's logbook and are contained in the summary judgment record. In grievance #3417 Plaintiff grieved his medical-care and unsanitary-cell-conditions claims. He did not grieve any of his retaliation claims.

2.    Plaintiff's retaliation claims will be dismissed for failure to exhaust available administrative remedies

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones*, 549 U.S. at 211). The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, it also means that failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004).

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 (the "prison grievance procedures supply the yardstick for measuring procedural default."). Therefore, the procedural requirements for exhaustion in a given case "are drawn from the polices of the prison in question rather than from

any free-standing federal law." *Shifflett v. Korszniak,* 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill,* 372 F.3d at 231).

"Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted an unexhausted claims, courts will dismiss the latter but not the former." *Id.* (citing *Jones,* 549 U.S. at 219-20). "Retaliation is a separate claim, and therefore must be separately grieved." *Id.* at 366 (citing *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990)).

Defendants have the initial burden of demonstrating that Plaintiff failed to resort to the available administrative remedies. *See, e.g., Rinaldi,* 904 F.3d at 268. They have satisfied their burden with respect to Plaintiff's retaliation claims. Therefore, the burden shifts to Plaintiff to demonstrate that the administrative remedies were in fact unavailable to him for those claims. *Id.*

The Supreme Court explained in *Ross* that the term "available" means "capable of use" to obtain "some relief for the action complained of." 136 S. Ct. at 1859 (quoting *Booth v. Churner,* 532 U.S. 731, 738 (2001)).

> [It] identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Rinaldi,* 904 F.3d at 266-67 (quoting *Ross,* 135 S. Ct. at 1859-60). *See also Hardy,* 959 F.3d at 584. The Court of Appeals for the Third Circuit has further held "that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own

policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365.

Plaintiff has not satisfied his burden of proving that any of the above-cited circumstances were present and made administrative remedies unavailable for his retaliation claims. The Court does not find credible his assertion that some of his grievances were discarded and not processed, and there is no other credible evidence that he was otherwise thwarted from exhausting any of his retaliation claims. Moreover, although Plaintiff may have received a belated response to certain grievances, none of them pertained to a retaliation claim. As the Court has found, he did not submit any grievances about retaliation.

Finally, Plaintiff argues that the BCJ did not follow its own grievance policy by requiring him to hand his grievances to an officer for placement in the box. This argument has no merit. The BCJ's policy directs that grievance forms are "to be placed in the request box." (Defs' Ex. C, ECF No. 174-3 at p. 31). It does not state that inmates are the only ones who may place those forms in the box. Additionally, there is no question that Plaintiff understood the BCJ's grievance policy and knew exactly how to file a grievance when he was housed in the SNU and RHU.

Based upon the foregoing, Plaintiff did not exhaust his available administrative remedies with respect to any of his retaliation claims. Therefore, he procedurally defaulted each of his retaliation claims and accordingly, judgment will be granted in Defendants' favor with respect to these claims.

B.    Unsanitary-Cell-Conditions and Delayed-Medical-Care Claims
        Against Officer Ruff

    1.    Factual Background

Plaintiff's remaining two claims are brought against Officer Ruff and pertain to an incident that occurred on April 28, 2016 when Plaintiff experienced the symptoms of food poisoning after he ate lunch in his cell. He claims that Office Ruff's actions delayed him medical care and exposed him to unsanitary conditions.

The parties do not dispute that on April 28, 2016, and prior to Plaintiff becoming ill, he had used the intercom call button in his cell to contact Officer Ruff at least a few times on matters that are not relevant to this case. She eventually placed Plaintiff on 24-hour lockdown that day. The parties also do not dispute that sometime after Plaintiff ate his lunch he vomited and defecated on his clothing and in his cell; that he pressed the intercom button to notify Officer Ruff that he was sick; and, that at some point a nurse or nurses came to his cell and diagnosed him with food poisoning that required no treatment. Plaintiff remained in his cell and wearing soiled clothing until after Officer Ruff's shift ended and she was replaced by Officer Skelton, who allowed Plaintiff to shower, change his clothes, and clean his cell.[8]

What the parties do dispute is the timeline of events, how Officer Ruff responded to Plaintiff when he advised her that he was sick, and whether it was she who contacted the medical staff.[9] For the purposes of ruling on Defendants' summary judgment motion, the Court accepts

---

[8] Because she was female, Officer Ruff was not permitted to enter Plaintiff's cell alone. (ECF No. 174 ¶ 16; ECF No. 202, ¶ 16; ECF No. 205, ¶ 16).

[9] For example, Defendants direct the Court to the grievance Plaintiff filed about the incident (grievance #3417 (Defs' Ex. N, ECF No. 174-11 at pp. 2-6)), as well as his deposition testimony (Defs' Ex. A), which they maintain indicates that he first became ill around 1:30 p.m. and *Footnote continued on the next page…*

15

Plaintiff's version of events as set forth in his affidavit. (Pl's Ex. I, ECF No. 203-11 at pp. 2-3).

Plaintiff avers that he began experiencing severe stomach pains shortly after he ate his lunch, which had been served to him between 11:00 and 11:30 a.m. Plaintiff immediately activated his intercom button to notify Officer Ruff that he was sick. She would not listen to him and instead admonished him for using his intercom call button too much that day and placed him on 24-hour lockdown. Because Officer Ruff was not responding to his request for assistance, Plaintiff got the attention of an inmate who was walking by his cell. That inmate then went to Officer Ruff on Plaintiff's behalf and advised her that Plaintiff was sick. He returned to Plaintiff's cell door and told him that Officer Ruff said that he would have to wait. (*Id.*)

Plaintiff next sought assistance from another inmate, and soon thereafter Officers Figurel and Kimmer arrived at his cell door and observed Plaintiff vomiting and defecating. According to Plaintiff, Officer Figurel is the one who contacted the medical department. Then, two officers that Officer Ruff had contacted arrived at Plaintiff's cell and started to drag him out of it because Officer Ruff had told them that he was being disruptive. (*Id.*) While that was occurring, two nurses arrived at Plaintiff's cell. According to Plaintiff, the nurses told him "that it appeared that [he] had the symptoms of food poisoning" and advised him that "if [his] condition and pain increased, that [he] was to notify them and they would bring me to medical[.]" (*Id.* at p. 3). Plaintiff does not aver that his symptoms persisted or that he required any medical treatment.

---

notified Officer Ruff that he was sick around 2:00 p.m. In contrast, in his affidavit Plaintiff avers that he was served his lunch sometime between 11:00 and 11:30 a.m. and became ill and notified Officer Ruff shortly thereafter. (Pl's Ex. I, ECF No. 203-11 at p. 2). Defendants contend that the Court should disregard Plaintiff's affidavit because he attempts to change the timeline of events. Because Officer Ruff is entitled to summary judgment even under the facts as recounted by Plaintiff in his affidavit, the Court does not need to consider Defendants' argument in this regard.

About ten to fifteen minutes later, Plaintiff asked Officer Ruff if he could shower, clean his cell, and get a change of clothes. She told him that she did not want to deal with him and that he would have to wait for the next officer on shift to assist him. (*Id.*) Plaintiff maintains that Officer Skelton began his shift approximately "2-4 hours later" and within fifteen minutes he allowed Plaintiff to shower, change his clothes, and clean his cell. (*Id.*; Pl's Ex. D, ECF No. 203-6 at p. 5).

        2.      Analysis

        a.    <u>Unsanitary Cell</u>

Plaintiff claims that Officer Ruff's actions resulted in him being subjected to unsanitary-cell conditions. Because he was a pretrial detainee, this claim is governed by the Due Process Clause of the Fourteenth Amendment, which protects a pretrial detainee against "punishment" prior to the adjudication of guilt. *Hubbard v. Taylor*, 399 F.3d 150, 158-67 (3d Cir. 2005) ("*Hubbard I*") (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)); *see, e.g., Bistrian v. Levi*, 696 F.3d 352, 372-75 (3d Cir. 2012); *Murray v. Keen*, 763 F. App'x 253, 255 (3d Cir. 2019) ("sentenced prisoners are protected from only punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment.") (citing *Hubbard I*, 399 F.3d at 166-67).

The Supreme Court explained in *Bell v. Wolfish* that crowding and other living conditions may constitute punishment of detainees if they inflict "genuine privations and hardships over an extended period of time[.]" 441 U.S. at 542. "'There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned.'" *Id.* at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). The Third Circuit Court of Appeals has further explained that the Fourteenth Amendment standard of unconstitutional punishment contains an objective

17

component which requires an inquiry into whether the deprivation at issue was "sufficiently serious[.]" *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

While particularly oppressive conditions may constitute punishment even if imposed for a short period of time, Defendants are correct that no reasonable jury could conclude that the single incident at issue in this case was sufficiently serious so as to violate Plaintiff's federal constitutional rights. While no doubt uncomfortable and unpleasant, by Plaintiff's own account he was subjected to the unsanitary cell conditions for no more five hours and only on that one occasion. That circumstance does not rise to the level of a "punishment" that implicated his substantive due process rights. *See, e.g., Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) ("*Hubbard II*") (holding that triple celling of pretrial detainees and use of floor mattresses did not violate detainee's due process rights because they "were not subjected to genuine privations and hardship over an extended period of time"); *Toomer v. Camden County Corr. Facility*, No. 17-cv-197, 2017 WL 2483700, *8 (D. N.J. June 8, 2017) ("[t]he length of exposure to allegedly unsanitary conditions or deprivations is one consideration in evaluating the objective prong to a claim of unconstitutional conditions of confinement[,]" and concluding that "[p]laintiff's allegation of approximately 48 hours of toilet and water access issues did not rise to the level of a constitutional deprivation."); *Sadelmyer v. Peltzer*, No. 12-cv-1785, 2014 WL 1452124, *3-4 (W.D. Pa. Apr. 14, 2014) (plaintiff did not meet the objective component necessary to establish a due process violation when her complaints were limited to an alleged exposure to unsanitary material on two isolated occasions).

Because Plaintiff has failed to adduce evidence from which a reasonable factfinder could conclude that he was subjected to conditions of confinement in his cell that amounted to a

violation of his constitutional rights, summary judgment will be granted in Officer Ruff's favor

on his unsanitary-cell-conditions claim.

b. Delayed-medical-care claim

All prisoners have a right to adequate medical care. In *Estelle v. Gamble*, 429 U.S. 97,

103-04 (1976) the Supreme Court held that "deliberate indifference *to a serious medical need* of

prisoners constitutes the 'unnecessary and wonton infliction of pain'...proscribed by the Eighth

Amendment." *Id.* at 104 (emphasis added). As set forth above, because Plaintiff was a pretrial

detainee at the time of all alleged events in this action, this claim is governed by the Due Process

Clause, not the Eighth Amendment. Nevertheless, courts apply the Eighth Amendment's

deliberate indifference legal standard when evaluating the medical-care claims of pretrial

detainees. *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *Moore v.*

*Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019); *Edwards v. Northampton County*, 663 F. App'x

132, 135 (3d Cir. 2016); 1 Rights of Prisoners § 4:3, Rights of pretrial detainees to medical care,

(5th ed.) (Westlaw, current through Sept. 2019) ("There seems no real reason to distinguish the

medical needs of inmates from those of detainees.")

Under that standard Plaintiff must prove two things. First, he must make an objective

showing that his medical need was serious. *See, e.g., Rouse v. Plantier*, 182 F.3d 192, 197

(3d Cir. 1999). Second, Plaintiff must make a subjective showing that Office Ruff was

deliberately indifferent to his serious medical need. *Id.*

Defendants contend that no reasonable jury could concluded that Plaintiff's food

poisoning amounted to a serious medical need. "A serious medical need is 'one that has been

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would

easily recognize the necessity for a doctor's attention.'" *Atkinson v. Taylor*, 316 F.3d 257, 272 (3d Cir. 2003) (quoting *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted). "A medical need is also serious where the denial of treatment would result in the 'unnecessary and wanton infliction of pain,' *Estelle*, 429 U.S. at 103, or a 'life-long handicap or permanent loss,' *Lanzaro*, 834 F.2d at 347." *Id.* (parallel citations omitted).

The Court agrees with Defendants that, even when viewing the lights most favorable to Plaintiff, his medical need was not serious. By Plaintiff's own account, the nurses who evaluated him determined that his condition did not require any medical treatment whatsoever. Thus, there is no genuine issue of material fact as to whether Plaintiff's food poisoning amounted to a serious medical need. It did not. *See, e.g., Green v. Philadelphia County Prison*, No. 00-cv-5330, 2006 WL 2869527, *9-10 (E.D. Pa. Oct. 4, 2006) (inmates' food poisoning, which he experienced on four non-consecutive days and which required no medical care, was not a serious medical condition).

Additionally, even if Officer Ruff was not the one who called the nurses to attend to Plaintiff, the undisputed evidence is that a call was made and that soon thereafter nurses arrived at his cell and determined that he required no treatment. Accordingly, Plaintiff's medical attention was not delayed to any substantial degree. Moreover, the general rule is that a delay in medical care can only constitute a constitutional violation if there has been deliberate indifference which results in harm. *Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (summary judgment on medical treatment claim appropriate when there was no evidence that the delay in medical treatment "expose[d] the inmate 'to undue suffering or the threat of tangible

20

residual injury.'" (quoting *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference with results in…harm"); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (same); *Fox v. Lawrence County Jail*, No. 06-cv-1010, 2008 WL 2704546, *10 (W.D. Pa. June 30, 2008) (defendant entitled to summary judgment due to the absence of evidence that plaintiff suffered additional harm caused by the delay in medical treatment). Since Plaintiff required no treatment for his food poisoning, he has not adduced any evidence from which a reasonable jury could conclude that he was harmed by Officer Ruff's alleged delay-causing actions.

In sum, there is no genuine issue of material fact related to Plaintiff's delayed-medical-care claim and summary judgment will be granted in Officer Ruff's favor on this claim as well.

## IV.   Conclusion

Based upon the foregoing, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 171) and enter judgment in their favor and against Plaintiff.

BY THE COURT:

Dated: June 30, 2020

PATRICIA L. DODGE
United States Magistrate Judge